JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

**B-01-025**

The JS—44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Ron M Levine and Serena R. Leivne

## DEFENDANTS

Allstate Insurance Company

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Cameron Co.
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

United States District Court
Southern District of Texas
FILED

FEB 07 2001

Michael N. Milby
Clerk of Court

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Larry J. Goodman
Adami, Goldman, + Shuffield, Inc.
9311 San Pedro
San Antonio, TX 78216

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION    (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
    Plaintiff

☐ 2 U.S. Government
    Defendant

☐ 3 Federal Question
    (U.S. Government Not a Party)

☑ 4 Diversity
    (Indicate Citizenship of Parties
    in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES    (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

☑ 1 Original
    Proceeding

☐ 2 Removed from
    State Court

☐ 3 Remanded from
    Appellate Court

☐ 4 Reinstated or
    Reopened

☐ 5 Transferred from
    another district
    (specify)

☐ 6 Multidistrict
    Litigation

☐ 7 Appeal to District
    Judge from
    Magistrate
    Judgment

## V. NATURE OF SUIT    (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Declaratory Judgement - Defense owed to Insured;
Indemnity owed to Insured under Homeowner's Policy

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ YES   ☑ NO

## VIII. RELATED CASE(S)    (See instructions)
IF ANY

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

**United States District Court
Southern District of Texas
FILED**

FEB - 7 2001

**Michael N. Milby
Clerk of Court**

| | | |
|---|---|---|
| RON M. LEVINE AND SERENA R. LEVINE | § § § | |
| PLAINTIFFS | § § § | **B-01-025** |
| V. | § § | CIVIL ACTION NO._____ |
| ALLSTATE INSURANCE COMPANY | § § § | |
| DEFENDANT. | § | NON-JURY |

## PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGEMENT

RON M. LEVINE AND SERENA R. LEVINE, Plaintiffs, petition the Court for a construction of a liability insurance policy and a declaration that Defendant has a duty to defend and indemnify the named parties and that there is coverage in connection with a suit presently pending against RON M. LEVINE AND SERENA R. LEVINE. In support of this complaint, the Plaintiffs show:

### PARTIES

1.     Plaintiff's, RON M. LEVINE AND SERENA R. LEVINE, are individuals that reside in South Padre Island, Cameron County, Texas.

### SERVICE OF PROCESS

2.     Defendant, ALLSTATE INSURANCE COMPANY, is an insurance company duly organized and existing under the laws of the State of Illinois, and authorized to issue homeowner's insurance policies in the State of Texas, having its principal place of business in Northbrook, Illinois and may be served with process through their attorney of record Larry J. Goldman, at 9311 San Pedro, Suite 900, San Antonio, Texas 78216. Service via the U.S. Postal Service via the Court is

requested at this time.

## VENUE AND JURISDICTION

3.      Jurisdiction is proper under 28 U.S.C. § 1391, as the Plaintiffs reside in Southern

District of Texas and a substantial part of the events or omissions giving rise to the

claim occurred in this District.  The object of the litigation for which the Plaintiffs

seek declaratory judgement is the policy which was issued by an agent in Port

Isabel, Texas to the Levines in South Padre Island, Cameron County, Texas.  *St.*

*Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1254 (5th Cir. 1998).

All purposeful contacts relating to the policy which is the object of this controversy

are in Cameron County, Texas, and therefore, within the Brownsville Division of

the Southern District of Texas.

## FACTUAL BACKGROUND

4.      Defendant, ALLSTATE INSURANCE COMPANY, issued a homeowner's

insurance policy to Ron M. Levine and wife, Serena R. Levine, that is at issue in

this Declaratory Judgement action.  The policy number of the policy issued by

Allstate Insurance Company is 0 16 935521 05.03.  The homeowner's policy is a

standard Texas Homeowners policy which provides liability coverage with a per

occurrence limit of $300,000.  A true and correct copy of the policy is attached

hereto as Exhibit "A" and incorporated by reference herein the same as if fully

copied and set forth at length.  The policy contains the endorsement, HO-225,

listing 606 E. Mandalay, San Antonio, Texas as an additional insured location

under the policy.

5.      The policy expressly provides that ALLSTATE INSURANCE COMPANY will

-2-

provide a defense and pay up to the limit of liability, provided:

If a claim is made or a suit is brought against an <u>insured</u> for damages because of <u>bodily injury</u> or <u>property damage</u> caused by an <u>occurrence</u> to which this coverage applies, we will:

(1)     Pay up to our limit of liability for the damages for which the insured is legally liable.

(2)     Provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent.

<u>Occurrence</u> is defined as "an accident, including exposure to conditions, which result in <u>bodily injury</u> or <u>property damage</u> during the policy period." "<u>Bodily injury</u> means bodily harm, sickness or disease. This includes required care, loss of services and death that results." "<u>Property damage</u> means injury to, destruction of, or loss of use of property."

See Exhibit "A", insurance policy number 0 16 935521 05/03

## UNDERLYING LAWSUIT

6.      Karla Clayton Pollock has filed a lawsuit, cause number 98CI-14393, in the 37th District Court, Bexar County, Texas (the Underlying Lawsuit) naming Ron M. Levine and wife Serena Levine, and Alamo Hy-Tech, Inc, as Defendants. A true and correct copy of Plaintiff's Fourth Amended Original Petition is attached hereto as Exhibit "B" and is incorporated herein by reference.

7.      In the Underlying Lawsuit, Plaintiff, Karla Clayton Pollock, seeks to recover damages related to the sale of the insureds' residence, including allegations of negligence and physical injury.

## DUTY TO DEFEND AND INDEMNIFY

8.      In Texas, an insurer's duty to defend is determined by the factual allegations in the pleadings and the language of the insurance policy. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W. 2d 819, 821 (Tex. 1997). If any claim in the pleading is

-3-

potentially within the policy's coverage, then the insurance company has a duty to defend. *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). Pollock's Fourth Amended Original Petition clearly and unequivocally alleges facts which would constitute and "Occurrence" as defined by the policy.

9. The Levines also seek a declaration that Allstate has a duty to indemnify. In Texas, the duty to indemnify is a separate duty form the duty to defend. *Cowan*, 945 S.W. 2d at 821. Although the duty to defend is determined by the complaint allegation rule, that is by comparing the allegations in the pleadings with the policy language, the duty to indemnify is established by the actual facts in the underlying suit. *Id.*

10. The Underlying Lawsuit does allege facts constituting an "occurrence" and facts alleging "property damage" and "bodily injury." Further, the policy specifically provides for coverage if such occurrence are alleged as acts of negligence, as alleged in the Underlying Lawsuit.

### REQUEST FOR DECLARATORY RELIEF

11. RON M. LEVINE AND SERENA R. LEVINE have demanded that Defendant provide a defense in the Underlying Lawsuit. Plaintiffs seek a declaration from this Court pursuant to 28 U.S.C. § 22.01, that there is a duty to defend and indemnify RON M. LEVINE AND SERENA R. LEVINE, and pay any judgement that might be rendered in the Underlying Suit. The cost of defending and/or indemnifying RON M. LEVINE AND SERENA R. LEVINE in the Underlying Lawsuit would be a sum in excess of the minimum jurisdictional limits of this Court.

-4-

## ATTORNEY'S FEES

12.    Plaintiff is currently representing themselves Pro-Se, however; Plaintiff should be

compensated for the time and effort expended in order to seek justice from

Defendant.  An award of reasonable and necessary attorney's fees to Plaintiff

would be equitable and just and, therefore, authorized by § 37.009 of the Texas

Civil Practice & Remedies Code.

13.    WHEREFORE PREMISES CONSIDERED, Plaintiff request that Defendants be

cited to appear and answer and that upon final trial, Plaintiff have the following:

A.    A Declaration that Defendant does have a duty to defend Plaintiffs in the

Underlying Lawsuit;

B.    A Declaration that Defendant does have a duty to pay any judgement rendered in

the Underlying Lawsuit;

C.    Cost of Court;

D.    Attorney's Fees; and

E.    Such other relief to which Plaintiff may be justly entitled.


Respectfully submitted,

Ron M. Levine
P.O. Box 3996
South Padre Island, TX 78597
(956) 761-1632
(956) 761-4626 Facsimile

By:_____
       Ron M. Levine, Pro Se

ATTORNEY FOR PLAINTIFF

# EXHIBIT A

CVisPDF – www.fasiio.com

# Allstate®

## Texas Homeowners Policy
## Form B

# QUICK REFERENCE
# TEXAS HOMEOWNERS POLICY - FORM B

Insuring Agreement ........................................................ 1
Definitions.................................................................... 1

## SECTION I - PROPERTY COVERAGE

Coverage A
   Dwelling ................................................................ 1
   Other Structures....................................................... 1
Coverage B
   Personal Property .................................................... 2
   Personal Property Off Premises ............................. 2
Special Limits of Liability ............................................ 2
Property Not Covered................................................. 2
Extensions of Coverage
   Debris Removal ...................................................... 2
   Loss of Use............................................................ 2
   Reasonable Repairs ............................................... 3
   Trees, Shrubs, Plants and Lawns........................... 3
   Property Removed .................................................. 3
   Consequential Loss ................................................ 3
   Automatic Removal................................................. 3
Perils Insured Against
   Coverage A (Dwelling) ........................................... 3
   Coverage B (Personal Property) ............................. 3

Exclusions................................................................. 4

Deductibles ............................................................... 5

Section I - Conditions
   Insurable Interest and Limit of Liability................... 5
   Residential Community Property Clause ................. 5
   Duties After Loss
      **Your Duties After Loss** .................................... 5
      Our Duties After Loss........................................... 6
   Loss Settlement..................................................... 6
   Loss to a Pair or Set.............................................. 6
   Salvage Rights ...................................................... 7
   Appraisal................................................................ 7
   Loss Payment......................................................... 7
   Catastrophe Claims ............................................... 7
   Other Insurance ..................................................... 7
   Suit Against Us ...................................................... 7
   Abandonment of Property ...................................... 7
   **Vacancy - Suspension of Coverage** ................. 7
   Mortgage Clause.................................................... 7
   No Benefit to Bailee ............................................... 8

## SECTION II - LIABILITY COVERAGE

Coverage C (Personal Liability).................................. 8
Coverage D (Medical Payments to Others)................. 8

Exclusions
   Coverage C and D Exclusions................................ 8

Coverage C Exclusions........................................... 9
Coverage D Exclusions........................................... 10

Additional Coverages
   Claim Expenses...................................................... 10
   Imperative Medical Expenses to Others................. 10
   Damage to Property of Others................................ 10

Section II - Conditions
   Limit of Liability...................................................... 10
   Severability of Insurance........................................ 10
   **Duties After Loss**............................................... **10**
   Duties of an Injured Person .................................... 11
   Payment of Claim under Coverage D...................... 11
   Suit Against Us ...................................................... 11
   Bankruptcy of the Insured...................................... 11
   Other Insurance...................................................... 11
   Notice of Settlement of Liability Claim................... 11

## POLICY CONDITIONS
## APPLYING TO SECTIONS I AND II

Policy Period ............................................................. 11
Concealment or Fraud ............................................... 11
Liberalization Clause ................................................. 11
Waiver or Change of Policy Provisions ...................... 11
Cancellation............................................................... 12
Refusal to Renew....................................................... 12
Assignment................................................................ 12
Subrogation............................................................... 12
Death ........................................................................ 12

---

## YOUR DUTIES AFTER A LOSS

Section I:

1. Protect the property from further damage.
2. Give prompt written notice to the company.
3. Call the police if a law has been broken.
4. Make a list of all damaged personal property, including costs.
5. If requested, obtain proof of loss form from your agent or the company and submit within 91 days of the request.

Section II:

1. Do not make any voluntary payments except for first aid to others at the time of the accident.
2. Give written notice to agent or company, including details about the accident and any witnesses.
3. Send copies of legal notices you receive to the company.
4. Help the company get the necessary information to make settlement.

FOR A COMPLETE LIST OF YOUR DUTIES SEE PAGES **5** AND **10** OF YOUR POLICY.

---

**Prescribed by the Texas Department of Insurance Homeowners Form B - Effective July 8, 1992 (Revised January 1, 1996)**

CSMPDF - www.csmsc.com

# HOMEOWNERS FORM B

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown on the declarations page and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"Bodily injury"** means bodily harm, sickness or disease. This includes required care, loss of services and death that results.

2. **"Business"** includes trade, profession or occupation.

3. **"Business day"**, when used in this policy means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4. **"Insured"** means you and residents of your household who are:

   a. your relatives; or

   b. other persons under the age of 21 and in the care of any person named above.

   Under Section II Liability, **"insured"** also means:

   c. any person or organization legally responsible for animals or watercraft to which this policy applies. You or a person included in 4.a. or 4.b. above must own the animal or watercraft. A person or organization using or having custody of these animals or watercraft without consent of the owner is not an **insured.**

   d. With respect to any vehicle to which this policy applies:

      (1) any employee of an **insured** while engaged in the employment of the **insured**; or

      (2) any other person using the vehicle on an **insured location** with your consent.

5. **"Insured location"** means:

   a. the **residence premises.**

   b. the part of other premises, other structures and grounds you use as a residence and:

   (1) which is shown on the declarations page; or

   (2) which you acquire during the policy period for your use as a residence.

   c. any premises you use in connection with a premises in 5.a. or 5.b. above.

   d. any part of a premises:

      (1) not owned by an **insured**; and

      (2) where an **insured** is temporarily residing.

   e. vacant land, other than farm land, owned by or rented to an **insured**.

   f. land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured**.

   g. individual or family cemetery plots or burial vaults of an **insured**.

   h. any part of a premises occasionally rented to an **insured** for other than **business** use.

6. **"Occurrence"** means an accident, including exposure to conditions, which results in **bodily injury** or **property damage** during the policy period.

7. **"Property damage"** means injury to, destruction of, or loss of use of property.

8. **"Residence employee"** means an employee of an **insured** who performs duties related to the ownership, maintenance or use of the **residence premises**, including maintenance or use of a motor vehicle. This includes employees who perform similar duties elsewhere for an **insured**. This does not include employees while performing duties related to the **business** of an **insured**.

9. **"Residence premises"** means the **residence premises** shown on the declarations page. This includes the one or two family dwelling, including other structures, and grounds where an **insured** resides or intends to reside within 60 days after the effective date of this policy.

## SECTION I - PROPERTY COVERAGE

### COVERAGE A (DWELLING)

We cover:

1. the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2. other structures on the **residence premises** set apart from the dwelling by clear space. This includes

structures connected to the dwelling by only a fence, utility line or similar connection.

The total limit of liability for other structures is the limit of liability shown on the declaration page or 10% of the Coverage A (Dwelling) limit of liability, whichever is greater. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

We do not cover other structures:

CMPDF - www.fesko.com

a. used for business purposes; or

b. wholly rented to any person, unless used solely as a private garage.

3. wall to wall carpeting attached to a building on the **residence premises**.

## COVERAGE B (PERSONAL PROPERTY)

We cover:

1. a. personal property owned, worn or used by an **insured** while on the **residence premises**. This includes window or wall air conditioning units.

   b. at your request, property of others while the property is on the part of the **residence premises** occupied by an **insured**.

2. a. personal property owned, worn or used by an **insured** anywhere in the world.

   b. at your request, personal property of a **residence employee** when:

      (1) the property is away from the residence premises of the **residence employee** and in the control of the **residence employee**; and

      (2) while the **residence employee** is performing work for you.

      Our total limit of liability under 2.a. and 2.b. above is 10% of the Coverage B (Personal Property) limit of liability or $1000, whichever is greater. This is additional insurance and does not reduce the Coverage B (Personal Property) limit of liability.

**SPECIAL LIMITS OF LIABILITY.** These limits do not increase the Coverage B (Personal Property) limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. Money/Bank Cards. $100 on money or numismatic property or loss by theft or unauthorized use of bank fund transfer cards registered to an **insured**.

2. Bullion/Valuable Papers. $500 on gold or silver bullion, manuscripts, notes, securities, stamps, philatelic property, accounts, bills, deeds, evidences of debt, letters of credit, passports, documents, transportation or other tickets.

3. Jewelry/Watches/Furs. $500 for loss by theft of gems, watches, jewelry or furs.

4. **Business** Personal Property. $2,500 on **business** property.

   We do not cover any **business** property:

   a. that consists of samples or articles for sale or delivery; or

   b. if the property is away from the **residence premises**.

## PROPERTY NOT COVERED. We do not cover:

1. articles separately described and specifically insured by this or other insurance.

2. animals or birds.

3. motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment.

   However, we do cover such vehicles which are not subject to motor vehicle registration and are:

   a. devices and equipment for assisting the handicapped.

   b. power mowers.

   c. golf carts.

   d. vehicles or machines used for recreational purposes while located on the **residence premises**.

   e. farm equipment not designed for use principally on public roads.

4. trailers, semi-trailers or mobile homes.

   However, we do cover:

   a. trailers and semi-trailers that are designed for use principally off public roads.

   b. boat trailers while on the **residence premises**.

5. aircraft meaning any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

6. watercraft, including outboard motors and furnishings or equipment.

   We do cover watercraft, including outboard motors and furnishings or equipment, while located on land on the **residence premises**.

7. property of roomers or tenants.

8. property usually rented to others off the **residence premises**.

## EXTENSIONS OF COVERAGE.

1. **DEBRIS REMOVAL.** We will pay your expense for the removal from the **residence premises** of:

   a. debris of covered property if a Peril Insured Against causes the loss.

   b. a tree that has damaged covered property if a Peril Insured Against causes the tree to fall.

   This does not increase the limit of liability that applies to the damaged property.

2. **LOSS OF USE.** If a loss caused by a Peril Insured Against under Section I makes the **residence premises** wholly or partially unentantable, we cover:

   a. additional living expense, meaning any necessary and reasonable increase in living expense you incur so that your household can maintain its normal standard of living.

   b. fair rental value, meaning the fair rental value of that part of the residence premises usually rented to others by you, less any expenses that do not continue.

   The total limit of liability for all loss of use is 20% of the Coverage A (Dwelling) limit of liability. This is additional insurance and does not reduce the

Coverage A (Dwelling) limit of liability. The deductible clause does not apply to loss of use coverage.

Payment will be for the reasonable time required to repair or replace the damaged property. If you permanently relocate, payment will be for the reasonable time required for your household to become settled.

The periods of time for loss of use are not limited by expiration of this policy.

3. **REASONABLE REPAIRS.** If a Peril Insured Against causes the loss, we will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage. This coverage does not increase the limit of liability that applies to the property being repaired.

4. **TREES, SHRUBS, PLANTS AND LAWNS.** We cover trees, shrubs, plants and lawns, on the **residence premises**, only for loss caused by the following Perils Insured Against: Fire or Lightning, Explosion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism and Malicious Mischief, Riot and Civil Commotion and Theft or attempted theft.

The maximum limit of liability for this coverage is 5% of the Coverage A (Dwelling) limit of liability. We will not pay more than $250 for any one tree, shrub or plant, including the cost of removal. We do not cover property grown for **business** purposes.

This is not additional insurance and does not increase the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to trees, shrubs, plants and lawns.

5. **PROPERTY REMOVED.** We pay for expense and damage incurred in the removal of covered property from an **insured location** endangered by a Peril Insured Against. This coverage exists on a pro rata basis for 30 days at each location to which such property is removed for preservation. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

6. **CONSEQUENTIAL LOSS.** We insure:

   a. property contained in a building on the **residence premises** against loss due to change in temperature as a direct result of physical damage to the dwelling, or any equipment contained in the dwelling, caused by a Peril Insured Against. The deductible clause does not apply to this coverage.

   b. property contained in a building on the **residence premises** against a loss due to change in temperature as a direct result of physical damage to any power, heating or cooling equipment (including connections and supply pipes) not contained in or on the dwelling, caused by a Peril Insured Against.

   The total limit of liability for the coverage described in 6.b. above is $500. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

7. **AUTOMATIC REMOVAL.** If you move from the **residence premises** shown on the declarations page to another location within the United States, to be occupied as your principal residence, we cover:

   a. the personal property under Coverage B (Personal Property) at each location in the proportion that the value at each location bears to the total value of all the personal property covered under Coverage B (Personal Property).

   b. property in transit up to 10% of the Coverage B (Personal Property) limit of liability or $1,000, whichever is greater.

We provide coverage for only 30 days from the date the removal begins.

---

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A (DWELLING)

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions.

### COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1. **Fire and Lightning.**

2. **Sudden and Accidental Damage from Smoke.**

3. **Windstorm, Hurricane and Hail.**

4. **Explosion.**

5. **Aircraft and Vehicles.**

6. **Vandalism and Malicious Mischief.**

7. **Riot and Civil Commotion.**

8. **Collapse of Building** or any part of the building.

9. **Accidental Discharge, Leakage or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.

   A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

   Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.

10. **Falling Objects.**

    This peril does not include loss to property contained in a building unless the roof or outside wall of the building is first damaged by the falling object.

11. **Freezing** of household appliances.

HO-B
- 3 -

12. **Theft**, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

---

## SECTION I - EXCLUSIONS

---

1. The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion.

   a. We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

   b. We do not cover loss caused by smog or by smoke from industrial or agricultural operations.

   c. We do not cover loss caused by windstorm, hurricane or hail to:

      (1) cloth awnings, greenhouses and their contents, buildings or structures located wholly or partially over water and their contents.

      (2) radio and television towers, outside satellite dishes, masts and antennas, including lead-in wiring, windchargers and windmills.

      (3) personal property contained in a building unless direct force of wind or hail makes an opening in a roof or wall and rain, snow, sand or dust enters through this opening and causes the damage.

   d. We do not cover loss of the following property by theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

      (1) personal property while away from the **residence premises** at any other residence owned by, rented to or occupied by an **insured**, except while an **insured** is temporarily living there.

      (2) building materials and supplies not on the **residence premises**.

   e. We do not cover loss to machinery, appliances and mechanical devices caused by mechanical breakdown.

   f. We do not cover loss caused by:

      (1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.

      (2) rust, rot, mold or other fungi.

      (3) dampness of atmosphere, extremes of temperature.

      (4) contamination.

      (5) rats, mice, termites, moths or other insects.

      We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

   g. We do not cover loss caused by animals or birds owned or kept by an **insured** or occupant of the **residence premises**.

      We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

   h. We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

      We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

   i. We do not cover loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind.

      We do cover an ensuing loss by theft or attempted theft or any act or attempted act of stealing.

   j. We do not cover loss caused by or resulting from freezing while the building is unoccupied unless you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain plumbing, heating and air conditioning systems of water.

   k. We do not cover loss caused by earthquake, landslide or earth movement.

2. **GOVERNMENTAL ACTION.**

   We do not cover loss caused by the destruction of property by order of governmental authority.

   But we do cover loss caused by acts of destruction ordered by governmental authority taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

3. **BUILDING LAWS.**

   We do not cover loss caused by or resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure.

4. **WAR DAMAGE.**

   We do not cover loss resulting directly or indirectly from war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for

military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

5. **NUCLEAR DAMAGE.**

We do not cover loss resulting directly or indirectly from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover direct loss by fire resulting from nuclear reaction, radiation or radioactive contamination.

---

## SECTION I - DEDUCTIBLES

**DEDUCTIBLE CLAUSE 1 - WINDSTORM, HURRICANE, HAIL OR WIND DRIVEN RAIN** - The amount shown on the declarations page for Deductible Clause 1 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property) that results from windstorm, hurricane, hail or wind driven rain.

**DEDUCTIBLE CLAUSE 2 - ALL OTHER PERILS** - The amount shown on the declarations page for Deductible

Clause 2 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property), unless the loss results from windstorm, hurricane, hail or wind driven rain.

If a single event causes loss by windstorm, hurricane, hail or wind driven rain and loss by lightning, only the larger deductible will apply.

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. to the **insured** for more than the amount of the **insured's** interest at the time of loss; or

   b. for more than the applicable limit of liability.

   Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

   Article 6.13. Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

2. **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

3. **Duties After Loss.**

   a. **Your Duties After Loss.** In case of a loss to covered property caused by a peril insured against, you must:

      (1) give prompt written notice to us of the facts relating to the claim.

      (2) notify the police in case of loss by theft.

      (3) (a) protect the property from further damage.

          (b) make reasonable and necessary repairs to protect the property.

          (c) keep an accurate record of repair expenses.

      (4) furnish a complete inventory of damaged personal property showing the quantity, description and amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

      (5) as often as we reasonably require:

          (a) provide us access to the damaged property.

          (b) provide us with pertinent records and documents we request and permit us to make copies.

          (c) submit to examination under oath and sign and swear to it.

      (6) send to us if we request, your signed sworn proof of loss within 91 days of our request on a standard form supplied by us. We must request a signed sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

          (a) This proof of loss shall state, to the best of your knowledge and belief:

              (i) the time and cause of loss;

              (ii) the interest of the **insured** and all others in the property involved including all liens on the property.

              (iii) other insurance which may cover the loss.

              (iv) the actual cash value of each item of property and the amount of loss to each item.

HO-B

(b) If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

    (i) the replacement cost of the described dwelling.

    (ii) the replacement cost of any other building on which loss is claimed.

    (iii) the full cost of repair or replacement of loss without deduction for depreciation.

b. **Our Duties After Loss.**

(1) Within 15 days after we receive your written notice of claim, we must:

    (a) acknowledge receipt of the claim.

If our acknowledgement of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.

    (b) begin any investigation of the claim.

    (c) specify the information you must provide in accordance with "Your Duties After Loss" (item 3.a. above).

We may request more information, if during the investigation of the claim such additional information is necessary.

(2) After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

    (a) within 15 business days; or

    (b) within 30 days if we have reason to believe the loss resulted from arson.

(3) If we do not approve payment of your claim or require more time for processing your claim, we must:

    (a) give the reason for denying your claim; or

    (b) give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

4. **Loss Settlement.** Covered property losses are settled as follows:

a. Our limit of liability and payment for covered losses to personal property, wall to wall carpeting, cloth awnings and fences will not exceed the smallest of the following:

(1) the actual cash value at the time of loss determined with proper deduction for depreciation.

(2) the cost to repair or replace the damaged property with material of like kind and

quality, with proper deduction for depreciation; or

(3) the specified limit of liability of the policy.

b. Our limit of liability for covered losses to dwelling and other structure(s) under Coverage A (Dwelling), except wall to wall carpeting, cloth awnings and fences, will be at replacement cost settlement subject to the following:

(1) If, at the time of loss, the Coverage A (Dwelling) limit of liability is 80% or more of the full replacement cost of the dwelling, we will pay the repair or replacement cost of the damaged building structure(s), without deduction for depreciation.

(2) If, at the time of loss, the Coverage A (Dwelling) limit of liability is less than 80% of the full replacement cost of the dwelling, we will pay only a proportionate share of the full replacement cost of the damaged building structure(s). Our share is equal to:

$$\text{Replacement Cost of the Loss} \times \frac{\text{Coverage A (Dwelling) Limit of Liability}}{\text{80\% of Replacement Cost of the Dwelling}}$$

(3) If, at the time of loss, the actual cash value of the damaged building structure(s) is greater than the replacement cost determined under (1) or (2) above, we will pay the actual cash value up to the applicable limit of liability.

In determining the amount of insurance required to equal 80% of the full replacement cost of the dwelling, do not include the value of excavations, underground pipes, and wiring and foundations which are below the surface of the ground.

We will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed. Repair or replacement must be completed within 365 days after loss unless you request in writing that this time limit be extended for an additional 180 days. Upon completion of repairs or replacement, we will pay the additional amount claimed under replacement cost coverage, but our payment will not exceed the smallest of the following:

(1) the limit of liability under this policy applicable to the damaged or destroyed building structure(s);

(2) the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises; or

(3) the amount actually and necessarily spent to repair or replace the damaged building structure(s).

5. **Loss to a Pair or Set.** In case of loss to an item which is part of a pair or set, the measure of loss shall be a reasonable and fair proportion of the total value of the pair or set. The importance of the item will be considered in assessing the loss. Such loss will not be considered a total loss of the pair or set.

6. **Salvage Rights.** If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property. We must bear the expense of our salvage rights.

7. **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:

   a. the full replacement cost of the dwelling.

   b. the full replacement cost of any other building upon which loss is claimed.

   c. the full cost of repair or replacement of loss to such building, without deduction for depreciation.

   If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

   Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

8. **Loss Payment.**

   a. If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you.

   b. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 business days after the date you perform the act.

9. **Catastrophe Claims.**

   If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

   Catastrophe or Major Natural Disaster means a weather related event which:

   a. is declared a disaster under the Texas Disaster Act of 1975; or

   b. is determined to be a catastrophe by the State Board of Insurance.

10. **Other Insurance - Section I.** Other insurance is permitted on property covered by this policy, but other insurance covering the dwelling is not permitted. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

11. **Suit Against Us.** No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues.

12. **Abandonment of Property.** There can be no abandonment of property to us.

13. **Vacancy.** If the insured moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy.

14. **Mortgage Clause (without contribution).**

    a. The word "mortgagee" includes trustee.

    b. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear.

    c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

    d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

       (1) at our request, pays any premiums due under this policy, if you have failed to do so.

       (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

       (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

    All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

    e. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

       (1) the mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.

       (2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

    At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give you.

If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice.  The date of cancellation cannot be before the 10th day after the date we mail notice.

We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

g.  If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower.  The unearned premium will be figured using the customary pro rata procedures.

h.  If we elect not to renew this policy, the mortgagee specifically named on the declarations page will be given 30 days written notice of the non-renewal.

15. **No Benefit to Bailee.**  We will not recognize any assignment or grant any coverage for the benefit of a person or organization holding, storing or moving property for a fee.

---

## SECTION II - LIABILITY COVERAGE

### COVERAGE C (Personal Liability)

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1.  pay up to our limit of liability for the damages for which the **insured** is legally liable.  Damages include pre-judgment interest awarded against the **insured**; and

2.  provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.

### COVERAGE D (Medical Payments to Others)

We will pay the necessary medical expenses incurred or medically determined within three years from the date of an accident causing **bodily injury**.  Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.  This coverage does not apply to you or regular residents of your household.  This coverage does not apply to **residence employees**.  As to others, this coverage applies only:

1.  to a person on the **insured location** with the permission of an **insured**.

2.  to a person off the **insured location**, if the **bodily injury**:

   a.  arises out of a condition on the **insured location** or the ways immediately adjoining.

   b.  is caused by the activities of an **insured**.

   c.  is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**.

   d.  is caused by an animal owned by or in the care of an **insured**.

---

## SECTION II - EXCLUSIONS

1.  **Coverage C (Personal Liability) and Coverage D (Medical Payments to Others)** do not apply to:

   a.  **bodily injury** or **property damage** which is caused intentionally by or at the direction of the **insured**;

   b.  **bodily injury** or **property damage** arising out of or in connection with a **business** engaged in by an **insured**.  But this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits.

   c.  **bodily injury** or **property damage** arising out of the rental or holding for rental of any part of any premises by an **insured**.  This exclusion does not apply to the rental or holding for rental of an **insured location**:

      (1)  on an occasional basis if used only as a residence.

      (2)  in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders.

      (3)  in part, as an office, school or studio.

      (4)  if the rental is for not more than three car spaces or stalls in garages or stables.

   d.  **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services.

   e.  **bodily injury** or **property damage** arising out of a premises:

      (1)  owned by an **insured**;

      (2)  rented to an **insured**; or

HO-B                                                          - 8 -

(3)  rented to others by an **insured**;

that is not an **insured location**.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

f.  **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of:

(1)  motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment;

(2)  trailers, semi-trailers or mobile homes;

which are owned or operated by or rented or loaned to an **insured**.

However, this exclusion does not apply to:

(1)  motor vehicles which are not subject to motor vehicle registration and are:

(a)  used for assisting the handicapped.

(b)  used to service an **insured location**.

(c)  golf carts while on the **residence premises** or used for golfing purposes.

(d)  designed and used for recreational purposes; and are:

(i)  not owned by an **insured**; or

(ii)  owned by an **insured** while on the **residence premises**.

(e)  in dead storage on the **residence premises**.

(f)  used exclusively on the **residence premises**.

(2)  trailers or semi-trailers while not being towed by or carried on a motor vehicle.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

g.  **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of watercraft:

(1)  with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an **insured**.

(2)  powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured**. But, outboard motors of more than 25 total horsepower are covered for the policy period if:

(a)  you acquire them prior to the policy period and:

(i)  you declare them at policy inception; or

(ii)  your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

(b)  you acquire them during the policy period.

(3)  that is a sailing vessel, with or without auxiliary power, which is 26 feet or more in length owned by or rented to an **insured**.

This exclusion does not apply while the watercraft is on the **residence premises**.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

h.  **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft.

Aircraft means any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

i.  **bodily injury** or **property damage** arising out of:

(1)  the entrustment by an **insured** to any person; or

(2)  the negligent supervision by an **insured** of any person;

with regard to the ownership, maintenance or use of any motor vehicle, watercraft or aircraft which is excluded in paragraph f., g. or h. above.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

j.  **bodily injury** or **property damage** caused directly or indirectly by war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

k.  **bodily injury** or **property damage** arising out of the transmission of sickness or disease by an **insured** through sexual contact.

l.  **bodily injury** to any person eligible to receive any benefits voluntarily provided or required to be provided by an **insured** under any workers' compensation law or occupational disease law.

2.  **Coverage C (Personal Liability)** does not apply to:

a.  liability under any contract or agreement.

However, this exclusion does not apply to written contracts:

(1) that directly relate to the ownership, maintenance or use of an **insured location**; or

(2) where the liability of others is assumed by an **insured**;

unless excluded elsewhere in this policy.

b. **property damage** to property owned by an **insured**.

c. **property damage** to property rented to, occupied or used by or in the care of an **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion.

d. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by American Nuclear Insurers, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada.

e. **bodily injury** to you or an **insured** within the meaning of part a. or part b. of **insured** as defined.

3. **Coverage D (Medical Payments to Others)** does not apply to:

a. **bodily injury** to a **residence employee** if the **bodily injury**:

(1) occurs off the **insured location**; and

(2) does not arise out of or in the course of the **residence employee's** employment by an **insured**.

b. **bodily injury** to any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. expenses we incur and costs taxed against an **insured** in any suit we defend.

b. premiums on bonds required in a suit we defend but not for bond amounts more than the limit of liability for Coverage C (Personal Liability). We need not apply for or furnish any bond.

c. reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit.

d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **Imperative Medical Expenses to Others.** We pay expenses incurred by an **insured** for immediate medical and surgical relief to others if imperative at the time of the accident.

3. **Damage to Property of Others.** We pay replacement cost up to $500 per **occurrence** for **property damage** to property of others caused by an **insured**.

We do not pay for **property damage**:

a. caused intentionally by an **insured** who is 13 years of age or older.

b. to property owned by an **insured**.

c. to property owned by or rented to a tenant of an **insured** or a resident in your household.

d. arising out of:

(1) a **business** engaged in by an **insured**.

(2) any act or omission in connection with a premises owned, rented or controlled by an **insured**, other than the **insured location**.

(3) the ownership, maintenance, use, loading or unloading of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to any motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured**.

## SECTION II - CONDITIONS

1. **Limit of Liability.** The limit of liability for Coverage C (Personal Liability) shown on the declarations page is our total liability under Coverage C (Personal Liability) for all damages resulting from any one **occurrence**. This limit is the same regardless of the number of **insureds**, claims made or persons injured.

The limit of liability for Coverage D (Medical Payments to Others) shown on the declarations page is our total liability under Coverage D (Medical Payments to Others) for all medical expense payable for **bodily injury** to one person as the result of one accident. The total limit of our liability for all expenses payable to two or more persons injured in one accident is $25,000.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition will not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** will perform the following

duties that apply or will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

   (1) the identity of the policy and **insured**.

   (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**.

   (3) names and addresses of any claimants and witnesses.

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**.

c. At our request, help us:

   (1) to make settlement.

   (2) to enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured**.

   (3) with the conduct of suits, including attending hearings and trials.

   (4) to secure evidence and obtain the attendance of witnesses.

d. The **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for immediate medical and surgical relief to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage D (Medical Payments to Others).**

The injured person or someone acting for the injured person will:

a. give us written proof of claim, under oath if required, as soon as is practical.

b. authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage D (Medical Payments to Others).** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an **insured**. Also, no action with respect to Coverage C (Personal Liability) can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement.

Under Coverage D (Medical Payments to Others), no action can be brought until 30 days after the required proofs of claim have been filed with us.

7. **Bankruptcy of the Insured.** Bankruptcy or insolvency of the **insured** or of the **insured's** estate will not relieve us of our obligations under this policy.

8. **Other Insurance - Section II.** If the **insured** has other insurance under Coverage C (Personal Liability), we will not be liable for a greater proportion of a loss than the limit of liability shown on the declarations page bears to the total limit of all valid and collectible insurance against such loss.

However, with respect to loss arising out of the ownership, maintenance, operation, use, loading or unloading of:

a. any motor vehicle or recreational motor vehicle at the **residence premises**; or

b. watercraft,

this policy will not apply to the extent that any valid and collectible insurance is available to the **insured**.

9. **Notice of Settlement of Liability Claim.**

a. We will notify the **insured** in writing of any initial offer to compromise or settle a claim against the **insured** under the liability section of this policy. We will give the **insured** notice within 10 days after the date the offer is made.

b. We will notify the **insured** in writing of any settlement of a claim against the **insured** under the liability section of this policy. We will give the **insured** notice within 30 days after the date of the settlement.

## SECTION I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or **bodily injury** or **property damage** in Section II which occurs during the policy period stated on the declarations page.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If the State Board of Insurance adopts a revision which would broaden or extend the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened or extended coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** Changes in this policy may be made and perils added only by attaching a written endorsement properly executed by our authorized agent. No provision of this policy may be waived unless the terms of this policy allow the

provision to be waived. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

   b. We may cancel this policy for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

      (1) If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel this policy for any reason.

         The effective date of cancellation cannot be before:

         (a) the 10th day after we mail notice if we cancel for non-payment of premium.

         (b) the 30th day after we mail notice if we cancel for any other reason.

      (2) If this policy has been in effect 90 days or more, we may not cancel this policy unless:

         (a) you do not pay the premium or any portion of the premium when due.

         (b) the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

         (c) you submit a fraudulent claim.

         (d) there is an increase in hazard covered by this policy that is within your control and that would produce an increase in the premium/rate of this policy.

         The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

   c. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

   d. We may not cancel this policy solely because you are an elected official.

6. **Refusal to Renew.**

   a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

   b. We may not refuse to renew this policy solely because you are an elected official.

   c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

      If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

      A claim does not include a claim that is filed but is not paid or payable under the policy.

   d. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named in the declarations page, written notice of our refusal to renew not later than the 30th day before the date in which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If the named insured dies, we insure:

   a. the named insured's spouse, if a resident of the same household at the time of death.

   b. the legal representative of the deceased. However, if this legal representative was not an **insured** at the time of death of the named insured, this policy will apply to such legal representative only with respect to the premises of the original named insured.

   c. any person who is an **insured** at the time of such death, while a resident of said premises.

**Prescribed by the Texas Department of Insurance Homeowners Form B - Effective July 8, 1992 (Revised January 1, 1996)**



# ENDORSEMENT NO. H0-225
### Effective
### July 8, 1992

# ADDITIONAL PREMISES LIABILITY
# COVERAGE

016 935 521

For an included additional premium, the definition of **insured location** is expanded to include the premises designated below.

DESIGNATION OF PREMISES

| Location | One or Two Family? | Medical Payments to Others (Included or Excluded) | Business Pursuits (yes or no) |
|---|---|---|---|
| 219 W BAHAMA SO PADRE ISLAND TX | 1 | INCLUDED | NO |
| 606 E MANDALAY SAN ANTONIO TX | 1 | INCLUDED | NO |
| | | | |
| | | | |
| | | | |

This insurance does not apply:

1. while business pursuits are conducted at such premises with the knowledge of the **insured** who owns or rents such premises, unless:

    a. the business pursuit is shown above; and

    b. the business pursuit is an office, private school or studio for a person other than an **insured.**

2. under Coverage D (Medical Payments to Others), to **bodily injury** to any person, other than a **residence employee** or insured farm employee of an **insured** while engaged in his employment. However, this exclusion does not apply if Coverage D (Medical Payments to Others) is shown as included above.

**Prescribed by the State Board of Insurance**
**Endorsement No. HO-225 - Additional Premises Liability Coverage**
**Effective July 8, 1992**

# EXHIBIT B

NO. 98-CI-14393

RECEIVED
SEP 8 2000
BY:

| | | |
|---|---|---|
| KARLA CLAYTON POLLOCK | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | 37TH JUDICIAL DISTRICT |
| | § | |
| RONALD MITCHELL LEVINE and | § | |
| wife, SERENE R. LEVINE | § | |
| | § | |
| **Defendants** | § | BEXAR COUNTY TEXAS |

## PLAINTIFF'S FORTH AMENDED ORIGINAL PETITION

KARLA CLAYTON POLLOCK, Plaintiff, complains of RONALD MITCHELL LEVINE and wife, SERENA R. LEVINE and ALAMO HY-TECH, INC., Defendants, and would respectfully show the Court as follows:

### I. PARTIES

1.    PLAINTIFF, KARLA CLAYTON POLLOCK, is a resident of Bexar County, Texas.

2.    DEFENDANTS, RONALD MITCHELL LEVINE and wife, SERENE R. LEVINE, are individuals and residents of Cameron County, Texas, and reside at 221 West Bahama, South Padre Island, Cameron County, Texas. Defendants have been served, appeared and answered and no further service of citation is required at this time.

3.    THIRD-PARTY DEFENDANT, ALAMO HY-TECH, INC. is a Texas corporation, doing business at 3005 IH-35, New Braunfels, Texas 78130. Third-Party Defendant has appeared and answered herein and no further service is necessary. Alamo

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**                    **PAGE 1**

Hy-Tech, Inc. has been named as Third-Party Defendant by Defendants, Levine, now complained of as Defendant by Plaintiff, Karla Clayton Pollock.

## II. CONDITIONS PRECEDENT & VENUE

All conditions precedent to Plaintiff's recovery have occurred or have been performed. Venue is proper in Bexar County, Texas where the conduct complained of occurred.

## III. FACTS

On information Plaintiff adopts in part, without admitting, the facts alleged by the Third-Party Plaintiffs, Ronald Mitchell Levine and Serene R. Levine, in their Third Party Petition against Alamo Hy-Tech, Inc. as outlined in below in subparagraphs 4-6 and would respectfully show unto the Court that Alamo Hy-Tech, Inc., is liable to the Plaintiffs in this action for all or part of the claims made by the Plaintiff in her Original Petition filed in this cause as alleged by Levines. The following is a general fact statement designed to put DEFENDANTS on notice and is not intended to be detailed or complete.

1.    In October 1996, Plaintiff purchased from Mr. and Mrs. Levine the residence at 606 E. Mandalay, in the San Antonio Metropolitan Area of Bexar County, Texas. In the negotiations leading up to the purchase, Mr. and Mrs. Levine represented that the home's foundation had been completely repaired and had a life time transferrable warranty on the foundation work.

2.    Unknown to Plaintiff, but well known to Mr. and Mrs. Levine, the foundation of the house had not been fully repaired but, at the direction of Defendants, had only a partial repair. Further, the foundation of the home had deflected to the extent that it had

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**          **PAGE 2**

damaged the superstructure and had been determined to be defective by an independent engineer. As defendants were aware at the time of the sale, the home had been so badly damaged by the foundation problems that its value was significantly reduced as a result of functional, structural and stigma damages, however these facts were not disclosed to Plaintiff.

3.      Mr. and Mrs. Levine were at all times aware of the defective foundation of the house, and were well aware that Plaintiff did not know and could not, in the exercise of reasonable diligence, discover the defect.    Nevertheless, Defendants expressly represented to Plaintiff that the house was more than a fair deal, that it was an excellent value and that the price at which the property was offered was fair market value considering the fully repaired condition of the home at the time of the purchase. Defendants fraudulently concealed the existence of the defective foundation and the engineer's report.    Plaintiff relied on Defendants' promises and representations in purchasing the house, and but for such representations and failures to disclose by Defendants would not have purchased the house. Further, had Plaintiff known of the latent defect which was well known to Defendants, she would not have purchased the house.

4.      Prior to the purchase of the house in question by Plaintiff, Alamo Hy-Tech, Inc. was engaged by Levines to repair the foundation on the house at 606 E. Mandalay, San Antonio, Texas. Defendants Levine, entered into a contractual relationship with Third-Party Defendant, Alamo Hy-Tech, Inc., for the repair of the foundation of said home.

5.      Plaintiff further alleges on information as follows: On July 23, 1994 Defendants Levine  signed a contract with Third-Party Defendant which called for the

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**                    **PAGE 3**

installation of 26 pilings outlined on a drawing for a total of $8,950.00.  On one occasion, when the work was being prepared, Defendant, Ron Levine, had a conversation with a representative of  Defendant, Alamo Hy-Tech, Inc., who informed Ron Levine that four of the 26 piers that were going to be installed under the house did not need to be installed because their placement would be at the highest point of the house as determined by previous elevations taken in January of 1994.  The representative of  Defendant, Alamo Hy-Tech, Inc.,  further stated that the installation of these four piers would only create a lot of damages and were not necessary. Defendant , Ron Levine, asked the Alamo Hy-Tech, Inc. representative about the lifetime warranty and whether the foundation problem could and would be fixed without the installation of the four piers.   The representative of Defendant, Alamo Hy-Tech, Inc.'s responded, "Yes, your foundation problem is fixed and you'll have your warranty." Accordiing to the warranty document "The warranty is an express warranty for an extended period of time, specifically... for the life of the structure...."

6.      Plaintiff further alleges on information as follows:  In August of 1996, Third-Party Plaintiffs, Ronald Mitchell Levine and Serene R. Levine, vacated the home in question and placed it up for sale.  Subsequently thereafter, Levines entered into a earnest money contract with Plaintiff, Karla Clayton Pollock, for the sale of the property and closing occurred during October, 1996.

7.      Prior to executing the purchase contract, Karla Clayton Pollock contacted Alamo Hy-Tech by telephone and, after informing them that she was interested in buying the house, inquired as to the transferability of the warranty and whether Alamo Hy-Tech,

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**                    **PAGE 4**

Inc. would indeed honor the warranty on the work they had done on the house at 606 E. Mandalay, San Antonio, Texas. Plaintiff was informed by representatives of Alamo Hy-Tech that the warranty was fully transferable and that Alamo Hy-Tech would honor the warranty on their foundation work on the house. However, Alamo Hy-Tech, Inc. failed to disclose that the foundation of the house had not been fully repaired or leveled and that the warranty was limited only to the work actually done on the house, despite the scope and terms of the written warranty. In reliance on the promises and representations of Alamo Hy-Tech as to the full effectiveness and transferability of the warranty, as well as the terms and scope of the warranty as issued by Alamo Hy-Tech, Inc., Plaintiff entered in to a contract with Defendants Levine for the purchase of the house at 606 E. Mandalay.

8.    Subsequent to closing, Plaintiff, Karla Clayton Pollock, contacted Third-Party Defendant, Alamo Hy-Tech, Inc., to come to the home and do some repairs on the foundation, believing that repairs and or leveling would be performed under the terms of the warranty. It was at this time that Defendant, Alamo Hy-Tech, Inc., informed Plaintiff that four pilings were not installed per instructions from Plaintiff, Ron Levine and that the warranty did not cover the leveling or the full extent of the work described in the written warranty. It was also at this time that Plaintiff, Karla Clayton Pollock, learned that the foundation of the home had not been fully repaired and that Alamo Hy-Tech would not honor the specific terms of the warranty as to repairs or the leveling of the home and to that portion of the foundation which had not been repaired in accordance with the written proposal and warranty from Alamo Hy-Tech to Levine. Furthermore, Alamo Hy-Tech claimed that the written warranty provided by Alamo Hy-Tech to Levine, which Alamo Hy-

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**                    **PAGE 5**

Tech had represented would be fully transferable, does not accurately reflect the work done by Alamo Hy-Tech, Inc. According to the written warranty, the entire foundation of the house at 606 E. Mandalay was fully repaired and subject to the transferable warranty. In addition, according to the written warranty "The warranty is and express warranty for an extended period of time, specifically... for the life of the structure...."

9.    In 1998 Plaintiff Karla Pollock became aware that Perma Pile, the company which issued the original warranty, had failed and was in bankruptcy. On or about April 1, 1998, Plaintiff received a letter dated March 30, 1998 from Alamo Hy-Tech which offered the opportunity to obtain a continuation warranty from Alamo Hy-Tech.  Plaintiff paid $150.00 to Alamo Hy-Tech for their new warranty of the original work done on the house in 1994 while the Levines owned the property.  Accordingly, Alamo Hy-Tech wrote and issued a new warranty on April 7, 1998.  The terms of the new warranty, written ny Alamo Hy-Tech were substantially the same as the original warranty issued to Levine and subsequently transferred to Plaintiff. According to the warranty document "the warranty is an express warranty for an extended period of time, specifically ... for the life of the structure...." The new warranty constitutes an affirmation and ratification of the first warranty.

10. Notwithstanding the warranties issued by Alamo Hy-tech settlement cracks continued to expand and new cracks appeared both subsequent purchase and after the issuance of the new warranty in 1998  to Plaintiff, Karla Pollock. Subsequent to the purchase of the second warranty by Plaintiff on foundation work done  on the property at 606 E. Mandalay, Plaintiff noticed additional new growth of settlement cracks and new

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**               **PAGE 6**

cracks became apparent to Plaintiff during November 1998. The continued growth of cracks and appearance of new cracks indicates further shifting and settlement to the foundation. The continued movement of the foundation, despite the warranty of Alamo Hy-Tech to the contrary, indicate poor or defective workmanship, failure of the work by Alamo Hy-Tech to stabilize the foundation as represented to Levine and breach the warranty and representations of Alamo Hy-Tech provided to Karla Pollock.

11. Subsequently, Plaintiff, Karla Pollockl engaged Alamo Hy-Tech to install the missing piers and re-level the house. Alamo Hy-Tech did not perform the re-leveling under the terms of the warranty but priced their contract for repairs at $9,000.00.

11. The failure of Alamo Hy-Tech to perform foundation repairs in a good and workmanlike manner and breach the warranty contracts to Karla Pollock were a producing cause of damages to Karla Pollock. Alamo Hy-Tech, Inc.'s misrepresentations and failures to disclose regarding repairs to the foundation of said home, the full effect and transferability of the written warranty and the issuing of fraudulent warranty contracts, were a proximate and/or producing cause of damages to Plaintiff, Karla Clayton Pollock engaged.

12. The misrepresentations and failures to disclose of Defendants Ron and Serena Levine were a producing cause of damages to Plaintiff Karla Pollock. The Levines failed to disclose a number of engineering reports which stated that the foundation was defective and that the superstructure of the house had been damaged as a result of the defect in the foundation. The reports further suggested repairs which had not been made by the Levines prior to the sale to Karla Pollock. Plaintiff, Karla Pollock, relied on the promises and

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**        **PAGE 7**

misrepresentation of the Levines which were  a proximate and/or producing cause of

damages to Plaintiff, Karla Clayton Pollock and resulted in Plaintiff entering into a

transaction in which she would not otherwise have engaged. Plaintiff would not have

entered in to the transaction to purchase the property at 606 E. Mandalay but for the

misrepresentations, failures to disclose and promises made by the Levines in connection

with the foundation and condition of the home.

## IV.  VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES - CONSUMER PROTECTION ACT

The general fact statement set out above is adopted with regard to this cause of

action.

Defendants' actions and conduct constitute violations of deceptive trade practices

and unconscionable conduct under the Texas Deceptive Trade Practices - Consumer

Protection Act (DTPA) paragraphs 17.46(b) 5, 7, 9, 12 and 23 (Texas Business and

Commerce Code).

In addition, Defendants' conduct is a breach of the warranties implied at the time of

sale, the transferred warranty and the subsequent warranty issued to Karla Pollock (Texas

Business and Commerce Code paragraph 17.50(a)(2)) and is unconscionable, as defined

in Texas Business & Commerce Code Paragraph 17.45, as well as Paragraph 17.46(b),

more particularly described as follows:

(2)     Defendants caused confusion or misunderstanding as to affiliation,

connection, or association with, or certification by, another;

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**                    **PAGE 8**

(5)     Defendants represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status affiliation, or connection which they do not;

(7)     Defendants represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they are of another;

(9)     Defendants advertised goods or services with intent not to sell them as advertised;

(12)    Defendants represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(23)    Defendants failed to disclose information concerning goods or services which was known at the time of the transaction and such failure to disclose such information was intended to induce the consumer into a transaction in to which the consumer would not have entered had the information been disclosed; and

Defendants engaged in an unconscionable action or course of action, which, to the consumers detriment, took advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree. Furthermore, Defendants breached express and implied warranties made to the consumer in the course of the transactions.

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**          **PAGE 9**

The acts and practices of Defendants were a producing cause of Plaintiff's damage and detriment. Plaintiff prays for recovery of damages as authorized by statute, as well as attorneys fees and costs of court within the jurisdictional limits of this Court.

## V. FRAUD IN REAL ESTATE

The general fact statement set out above is adopted with regard to this cause of action.

Plaintiff further pleads a cause of action based upon acts of fraud in a transaction involving real estate committed by Defendants in violation of Chapter 27, Texas Business & Commerce Code. Defendants made false representations and failed to disclose information which were done for the purpose of inducing Plaintiff to enter into a contract. The false representations and failures to disclose information were relied upon by Plaintiff in entering into the contract for the purchase of real estate. Plaintiff would not have entered into the transaction but for the false representations by Defendants.

Additionally and in the alternative, the Defendants failed to disclose matters on which they possessed far greater knowledge than the Plaintiff, and made representations which were false at the time they were made or were failures to disclose material facts which the Defendants either knew were false or were made without regard to their truth or falsity.

Defendants conduct resulted in damages to Plaintiff in an amount within the jurisdictional limits of the Court. Plaintiff prays for recovery of actual damages, expert witness fees, deposition costs and costs of court as authorized by statute, all in an amount within the jurisdictional limits of the court.

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**                    **PAGE 10**

## VI.  COMMON LAW FRAUD

The general fact statement set out above is adopted with regard to this cause of action.

Additionally and in the alternative, the Defendants failed to disclose matters on which they possessed far greater knowledge than the Plaintiff, and made representations which were false at the time they were made or were failures to disclose material facts which the Defendants either knew were false or were made without regard to their truth or falsity.

The promises, representations and failures to disclose of the Defendants were material, false, and made with the intent to deceive the Plaintiff and proximately caused damages to the Plaintiff.  Plaintiff prays for recovery of her damages in an amount within the jurisdictional limits of the court.

## VII.  NEGLIGENT MISREPRESENTATION

The general fact statement set out above is adopted with regard to this cause of action.

The Plaintiff further pleads a cause of action based upon the common law of negligent misrepresentation.  The Defendants, acting in a transaction in which they had a pecuniary interest supplied false information to the Plaintiff.  The Defendants failed to exercise reasonable care or competence in obtaining and communicating information. Additionally and in the alternative, the Defendants failed to disclose matters on which they possessed far greater knowledge than the Plaintiff, and made representations which were false at the time they were made or were failures to disclose material facts which the

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**          **PAGE 11**

Defendants either knew were false or were made by them recklessly without regard to the truth of the matter stated. The disclosures and representations of the Defendants were relied upon by the Plaintiff, to Plaintiff's damage and detriment. The acts of the Defendants were a proximate cause of damages to the Plaintiff in an amount within the jurisdictional limits of this Court. The Plaintiff further alleges that such false misrepresentation and failures to disclose by the Defendants were made negligently. Plaintiff prays for recovery of her damages in an amount within the jurisdictional limits of this Court.

## VIII. NEGLIGENCE

Pleading additionally or in the alternative, as appropriate, Plaintiff alleges a cause of action in negligence against Defendants. The general facts set out above are adapted here for all purposes.

Defendants were negligent in failing to correctly and/or completely repair and level the foundation. This failure allowed the foundation and superstructure to move and caused the property to suffer additional foundation, structural and cosmetic damage. In addition, as a result of Defendants negligence, Plaintiff has suffered severe mental distress and anguish and developed Temporo Mandibular Joint Syndrome due to the anxiety associated with the foundation problems and Defendant's negligent conduct in not having the foundation completely and/or correctly repaired and leveled.

Plaintiff asks the Court for recovery of actual damages resulting from Defendant's negligence in an amount within the jurisdictional limits of this Court.

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**                    **PAGE 12**

## IX.  DAMAGES

Damages include economic and or actual damages, as appropriate, reduction in value of the home due to functional, structural and stigma damages, out of pocket repair costs loss of use or diminished use, mental anguish and physical injury, loss of use of money and excessive payment of interest.

## X.  ATTORNEY FEES

The conduct of these Defendants has necessitated the engagement of the undersigned counsel and the filing of this action to recover damages and protect the interest of Plaintiff. Therefore Plaintiff is entitled to and prays for the recovery of all attorneys fees and costs of court incurred in the pursuit of this cause of action and further attorneys fees for any appeals of this cause of action in accordance with the Texas Deceptive Trade Practices - Consumer Protection Act and the Fraud in Real Estate statute.

## XI.  JURY TRIAL

Plaintiff has paid a jury fee in this cause and prays for trial by jury.

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer herein, for an early jury trial, and upon trial, that judgment be granted against Defendants, jointly and severally, or, in the alternative, in proportion to their liability, for economic and/or actual damages, attorneys' fees for trial and appeal, expert witness fees, costs of copies and depositions, costs of court, prejudgment interest, post-judgment interest, and all such

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**          **PAGE 13**

further and additional relief, general or special, as to which Plaintiff shall show herself

justly entitled at law or in equity.

Respectfully submitted,

Clyde R. McCormick II
State Bar No. 13457450
P. O. Box 790091
San Antonio, Texas 78279-0091
Telephone: (210) 340-5630
Telecopier: (210) 340-5687
**ATTORNEY FOR PLAINTIFF,**
**KARLA CLAYTON POLLOCK**

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing has been served on the party or the attorney of record in accordance with the applicable Rule 194 of the Texas Civil Procedure this 6th day of September, 2000.

**PLAINTIFF'S FOURTH AMENDED ORIGINAL PETITION**                     **PAGE 14**

AO 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

Southern _____ **DISTRICT OF** _____ Texas

Ron M. Levine and
Serena R. Levine

**SUMMONS IN A CIVIL ACTION**

v.

Allstate Insurance Co.

CASE NUMBER: B-01-025

TO: (Name and Address of Defendant)

Larry J. Goldman
adami, Goldman, + Shuffield, Inc.
9311 San Pedro
San Antonio, TX 78216

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

Ron M. Levine and Serena R. Levine
P.O. Box 3996
So. Padre Island, TX 78597

an answer to the complaint which is herewith served upon you, within ___20___ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Michael N. Milby
CLERK

2/7/01
DATE

Juanita Tabares
BY DEPUTY CLERK